

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,167

**EX PARTE CARL EDDIE MILLER, Applicant**

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 1010226-A IN THE 299TH JUDICIAL DISTRICT COURT
### FROM TRAVIS COUNTY

**COCHRAN, J., delivered the opinion of the court in which MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, JJ., joined. KEASLER, J., filed a concurring and dissenting opinion in which KELLER, P.J., and HERVEY, J., joined.**

### <u>OPINION</u>

In this habeas corpus proceeding, applicant claims that both his trial and appellate attorneys provided ineffective assistance of counsel that prejudiced his rights.[1] The habeas judge made findings of fact, conclusions of law, and a recommendation that this Court grant relief. We accept the habeas judge's findings of fact, but we disagree with some of his legal conclusions. Based on the habeas judge's factual findings and the applicable law, we conclude that applicant is not entitled to relief on his ineffective assistance of trial counsel claim, but he is entitled to relief on his

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

ineffective assistance of appellate counsel claim.

I.

A.      **Factual Background**.

Applicant, Carl Miller, was charged with murder for the stabbing death of Terry Burleson, a bail bondsman and member of a motorcycle club called "The Humping People."  At trial, the evidence was undisputed that applicant killed Burleson.  The only issue was whether he did so in self-defense.

The fifty-year-old applicant testified that, on Saturday, August 18, 2000, he "made the rounds" to bid farewell to friends and family before going home to California the next day.  He followed a friend to the Aristocrat Club, but he stayed outside because he did not have the $5.00 cover charge.  He started talking to some young women.  Soon, Burleson walked up, said that the women were with him, and cursed at applicant.  The two men exchanged words; then Burleson invited applicant to go around the corner to "talk."  James Cleveland, a friend of Burleson's and a fellow motorcycle club member, followed the two men around the corner and onto a concrete slab behind the club.

Applicant and Burleson had already begun to fight when Cleveland came around the corner. Cleveland saw applicant "swinging," and then Burleson kicked applicant about three times. Applicant also testified that Burleson kicked him twice in the chest and once in the leg, causing him to fall backwards.  Applicant explained that he could not run away due to a leg brace he wore because of injuries from a motorcycle accident.  He said that he feared for his life, so he pulled out his knife and stabbed Burleson in the chest and head "three or four times."  He "leaned" into Burleson as he stabbed him, pushing the blade in almost three inches, piercing Burleson's aorta, vena

cava, and heart.  Burleson was unarmed; his blood-alcohol level at the time of death was 0.14.

Applicant and Burleson had never met before, and applicant knew nothing about Burleson. At trial, the defense offered significant evidence of Burleson's character for violence when drinking[2] from four different witnesses.

* Robbie Davis, who had dated Burleson more than a decade earlier, said that she and Burleson had been members of the same motorcycle club.  She testified that Burleson was very jealous and became physically violent when he had been drinking.

* Douglas Hurst, applicant's former brother-in-law, testified that Burleson had a reputation for violence when he had been drinking.

* Glenn Crawford, applicant's cousin, testified that he had heard that Burleson was "someone you wouldn't want to be around because of his temper and violence," and that he was especially violent after drinking.

* Lee Arthur Thomas, who had known applicant for thirty years and Burleson for ten, testified that Burleson was violent and "very aggressive," as well as loud and profane when he had been drinking.

On rebuttal, the State called Deputy Darrell Galloway, Burleson's best friend and a fellow member of "The Humping People."  He said that Burleson was "nice.  He respects people.  He'll go out of his way to help you.  And he never harmed anyone."

The jury rejected applicant's self-defense claim and convicted him of murder.  The judge found the two enhancement paragraphs true and sentenced applicant to thirty years in prison.

On appeal, applicant raised four points of error: (1) the sufficiency of the evidence to reject his self-defense claim; (2) the trial court's failure to grant a mistrial based on a comment by the prosecutor that applicant had "a shackle on his leg because he murdered a man"; (3) the trial court's failure to grant a new trial based on that prosecutor's comment; and (4) the trial court's failure to

---

[2] The autopsy report stated that Burleson had "acute ethanol intoxication" at the time of death.

grant his motion for instructed verdict. The court of appeals rejected applicant's claims and affirmed his conviction and sentence.[3]

**B.    The Application for a Writ of Habeas Corpus and the Habeas Judge's Findings**.

Applicant filed a post-conviction application for a writ of habeas corpus five-and-a-half years after his conviction became final. He claimed that his trial counsel provided ineffective assistance of counsel because (1) he "failed to object to the prosecutor informing the jury that applicant was shackled during trial"; and (2) he "failed to present testimony regarding prior acts of violence committed by the deceased and his companion." He also claimed that his appellate counsel provided ineffective assistance of counsel because he "failed to raise the issue that the evidence was insufficient to prove that applicant's 1976 burglary conviction was for an offense committed after his 1972 possession of heroin conviction became final."

Trial counsel submitted an affidavit disputing his alleged ineffectiveness and explaining his strategic decisions at trial. Appellate counsel had died a year and a half before applicant filed his application and thus could not defend his actions or strategic decisions.

The habeas judge held a hearing at which trial counsel and his investigator testified. The habeas judge then made written findings of fact and conclusions of law.[4] He concluded that applicant's trial counsel made a strategic decision not to object to the prosecutor's comment concerning applicant's shackles and that, in any event, applicant was not prejudiced by that

[3] *Miller v. State*, No. 03-01-00362-CR, 2002 WL 1987453, 2002 Tex. App. LEXIS 6310 (Tex. App.—Austin August 30, 2002) (not designated for publication).

[4] After this Court reviewed the habeas materials as originally delivered, we remanded the case to the habeas court to determine whether the doctrine of laches barred applicant's claim concerning his appellate counsel. The habeas judge concluded that, although applicant's appellate counsel had died in 2006, laches did not bar applicant's claim.

comment.  The habeas judge also found that applicant's trial counsel was not ineffective for failing to discover and offer evidence concerning prior acts of violence by James Cleveland, who had accompanied Burleson to the fight, and, according to applicant, had blocked any possible escape route from the fight.  We agree with those factual findings and legal conclusions.

The habeas judge found that trial counsel provided constitutionally ineffective assistance because he failed to discover and offer evidence that Burleson had been convicted of misdemeanor assault in 1982 for stabbing a man named Chris Hanson.  The habeas judge concluded that applicant was prejudiced by this failure and recommended that applicant be granted relief on this claim.  The habeas judge also found that applicant's appellate attorney was ineffective because he failed to challenge the sufficiency of the evidence to prove that the enhancement paragraphs were sequential and that applicant was therefore an habitual offender, subject to a minimum of twenty-five years' imprisonment.  The habeas judge concluded that applicant was prejudiced by this failure and recommended that applicant be granted relief on this claim as well.  We will thus turn to those two claims after setting out the general legal standards for an ineffective assistance of counsel claim.

II.

**A.      The Legal Standard for Assessing an Ineffective Assistance of Counsel Claim**.

To prevail on an ineffective assistance of counsel claim under *Strickland v. Washington*, the applicant must show that (1) counsel's  performance was deficient by falling below an objective standard of reasonableness[5] and (2) there is a probability, sufficient to undermine the confidence in the outcome, that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[5] 466 U.S. at 687 ("This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.").

been different.[6]  Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the challenged action 'might be considered sound trial strategy.'"[7]  The applicant must prove both of these prongs by a preponderance of the evidence.[8]  When the record contains no evidence of the reasoning behind counsel's actions, a court normally cannot conclude that counsel's performance was deficient.[9]

To determine whether counsel has provided effective assistance, courts must consider the totality of the representation and the particular circumstances of each case; we do not restrict the analysis to an evaluation of isolated acts or omissions of counsel.[10]  "The fact that another attorney

---

[6] *Id.* ("This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").

[7] *Id.* at 689.

[8] *Id.* at 694; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000) ("Appellant must prove both prongs of *Strickland* by a preponderance of the evidence in order to prevail.").

[9] *See Johnson v. State*, 68 S.W.3d 644, 655 (Tex. Crim. App. 2002) ("The record does not reveal defense counsel's reasons for not objecting to the prosecutor's comments. Given the presumption of effectiveness and the great deference we give to decisions made by defense counsel, we see nothing in the present record that would compel us to find counsel ineffective."); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[A]n appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it.") (quoting 3 WAYNE LAFAVE ET AL., CRIMINAL PROCEDURE § 11.10© (2d. ed 1999)); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) ("To defeat the presumption of reasonable professional assistance, 'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'") (internal citation omitted).

[10] *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004) ("The analysis is undertaken in light of the 'totality of the representation' rather than by examining isolated acts or omissions of trial counsel.").  As we have noted,

> when a reviewing court considers a claim of ineffective assistance of counsel, it must first analyze all allegations of deficient performance, decide whether counsel's conduct was constitutionally deficient, and, if so, then consider whether

may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance."[11]

With these general principles in mind, we turn to applicant's two claims.

**B.      Applicant Did Not Prove That His Trial Attorney Was Ineffective in Failing to Present Testimony Regarding the Murder Victim's Prior Assault Conviction.**

Applicant claims that his trial attorney was constitutionally deficient because he did not discover and offer evidence of Terry Burleson's prior conviction for misdemeanor assault. Applicant asserts that evidence of this 1982 assault would have been admissible under Rule 404(a)(2) of the Texas Rules of Evidence, and that the outcome of applicant's trial probably would have been different had the jury known about the murder victim's eighteen-year-old conviction.

*1.      The prior assault.*

Applicant has provided an affidavit from Chris Hanson, stating, "Terry Burleson stabbed me with a knife at an apartment complex in 1982."[12] Applicant also included copies of the 1982 offense report and the judgment of conviction for that assault. According to the offense report, Burleson had been making loud noises with his motorcycle as he drove around the apartment complex where he and Hanson both lived. Hanson and his brother went outside to tell Burleson to "knock it off." Burleson started to fight Hanson. Then Burleson pulled a knife and swung it at Hanson, cutting him

---

those specific deficient acts or omissions, in their totality, prejudiced the defense. *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004).

[11] *Scheanette*, 144 S.W.3d at 509.

[12] Mr. Hanson also stated,
I was not aware that Burleson was killed in Travis County in 2000 or that Carl Miller was charged with his murder. No lawyer or private investigator contacted me before Miller's trial to discuss the incident with Burleson. Had someone contacted me, I would have discussed the incident and that I considered Burleson to be very violent. I lived in Travis County and would have been available to testify at the trial had I been served with a subpoena.

on his elbow and under his left breast.  When Hanson's brother shot his pistol into the air, Burleson

ran off and threw his knife into the bushes.

*2.    The habeas court's findings.*

In his factual findings, the trial court stated,

8.    Trial counsel did not present evidence that . . . the decedent stabbed Chris Hanson with a knife at an apartment complex in Austin in 1982 and was convicted of assault.

9.    In rebuttal, Travis County Deputy Sheriff Darrell Galloway testified that decedent, his best friend, was peaceful, law-abiding, nice, respectful, and "never harmed anyone."

10.    On cross-examination, Galloway stated that he would not believe a lady who testified that the decedent had been violent to her.

11.    Trial counsel did not ask Galloway if he knew or had heard that the decedent stabbed Hanson and was convicted of assault.

We adopt these factual findings because they are supported by the record.[13]  We do not, however,

adopt the habeas court's legal conclusions, as they are not supported by the law.

*3.    The applicable law.*

Applicant is incorrect in concluding that evidence of Burleson's 1982 assault on Chris

Hanson would have been admissible under Rule 404(a)(2)[14] to show that Burleson was the first

aggressor in this case.  There was no serious dispute at trial that Burleson was indeed the first

aggressor.  He invited applicant to go around the corner and fight.  Applicant followed him.  They

---

[13] *See Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) ("[I]n most circumstances, we will defer to and accept a trial judge's findings of fact and conclusions of law when they are supported by the record.").

[14] T EX. R. EVID. 404(a)(2) ("Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: . . . (2) *Character of victim.*  In a criminal case and subject to Rule 412, evidence of a pertinent character trait of the victim of the crime offered by an accused. . . .").

fought.  Burleson kicked and hit him.  Applicant pulled out a knife and stabbed him.  The hotly

disputed issue was whether applicant had a duty to retreat before using deadly force against

Burleson, not whether Burleson initiated the fight.[15]

_____

[15]  The State's closing argument emphasized this point:

> When they get back there, the fight does not go well for the defendant.
> You heard him say–and [defense counsel] has spent a good deal of time in voir
> dire and opening statements talking about the disparity between the size of the two
> individuals.  It turns out that that's not that great a disparity at all.  About the same
> height.  Not that totally far off in size.  And Mr. Miller tells you that that's not
> something that really bothered him.  What did bother him, though, was once that
> fight began, he's losing and he's losing quick and he's losing fast.
> And so what does he do?  Does he retreat like a reasonable person would
> have?  You know, [defense counsel], when describing this scene, would have you
> sort of imagine this thing having occurred in like a handball court.  Why once you
> get in that door, you just can't get out.  There's walls everywhere.  It's sealed.
> There's nothing he could do, and it's–you just got to stay there.  You got to
> protect yourself.
> Today we learned that the handball court was more like a concrete slab for
> a basketball where there are no walls and retreat is easily available.  Would a
> reasonable person have retreated under those circumstances?  You bet.
> Now, was he receiving the threat of deadly force?  Of course not, of course
> not.  What he feared was not serious bodily injury.  What he feared was not death.
> What he feared was losing face.  And so he did what he's good at, knife work.

Defense counsel, in turn, emphasized the unreasonableness of retreat during the fight:

> Okay.  So let's get back to this retreat thing.  I've got this guy in front of me.  He
> outweighs me 40 or 50 pounds.  He's mad enough to be kicking me. . . .
> So here he is.  He turns to retreat.  He puts his knife in his pocket, and he
> turns to retreat, walking away.  Whop.  Bang.  Kick.  Hit.  And how far do you
> think he's going to get?  Do you know for a fact that if he turned to leave in
> whatever space he had to turn to leave that he wasn't going to get kicked again,
> knocked to the ground?  If he's got his back turned–now, here's a guy, didn't say
> a word, kicks him.
> . . .
> How many of you would have turned your back on a man who's been
> kicking your chest and hitting you and walk away?  Would you do that?  Well,
> you'd be braver than I and braver than Mr. Miller to do that.
> I submit to you, ladies and gentlemen, that you wouldn't do it and that no

The rules of evidence permit the defendant to offer evidence concerning the victim's character for violence or aggression on two separate theories when the defendant is charged with an assaultive offense, as applicant was in this case.[16]

First, the defendant may offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim to show the "reasonableness of defendant's claim of apprehension of danger" from the victim.[17] This is called "communicated character" because the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not.[18] This theory does not invoke Rule 404(a)(2) because Rule 404 bars

---

reasonable person in the same situation that Mr. Miller found himself in would do that at all, ever, under these circumstances. And don't forget that a person in the same situation is going to include a person in the same–with the same broken leg that he can't walk. . . .

     What about retreating? Why didn't Mr. Miller retreat? Well, why didn't Mr. Burleson retreat? Why didn't Mr. Burleson not invite him back there? Why didn't Mr. Burleson not start hitting him? Why didn't Mr. Burleson not start kicking him? If we're going to ask all of these "why didn't he" questions.

[16] *See Mozon v. State*, 991 S.W.2d 841, 845 (Tex. Crim. App. 1999) (setting out the two theories for admitting evidence of victim's character for violence); *see also Fry v. State*, 915 S.W.2d 554, 560-61 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (discussing the history and rationale for both theories of admitting evidence of the victim's character for violence).

[17] *Torres v. State,* 71 S.W.3d 758, 760 & n.4 (Tex. Crim. App. 2002) (evidence of victim's prior specific violent acts may be admitted to show the reasonableness of defendant's fear if he was aware of those specific acts); *Dempsey v. State*, 266 S.W.2d 875, 877-78 (Tex. Crim. App. 1954) (prior specific acts of violence by the victim offered by the defendant are admissible if (1) offered to show the reasonableness of defendant's claim of apprehension of danger, and (2) the acts of violence or misconduct were known to the defendant at the time of the homicide).

[18] *See Mozon*, 991 S.W.2d at 846 (when defendant's claim of self-defense rested on a perceived danger from victim, defendant could present evidence of victim's violent character to show her reasonable belief that force was immediately necessary to protect herself from the

character evidence only when offered to prove conduct in conformity, *i.e.*, that the victim acted in conformity with his violent character. Here, the defendant is not trying to prove that the victim actually is violent; rather, he is proving his own self-defensive state of mind and the reasonableness of that state of mind.[19]

Applicant did not know Burleson; he was unaware of his character for violence. Thus, applicant's counsel did not, and could not, offer "communicated character" evidence.

Second, a defendant may offer evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor. Rule 404(a)(2) is directly applicable to this theory and this use is called "uncommunicated character" evidence because it does not matter if the defendant was aware of the victim's violent character.[20] The chain of logic is as follows: a witness testifies that the victim made an aggressive move against the defendant; another witness then testifies about the victim's character for violence, but he may do so *only* through reputation and

victim's perceived threat).

[19] *See Hayes v. State*, 124 S.W.3d 781, 786 (Tex. App.—Houston [14th Dist.] 2003) (evidence of victim's prior assault with a wrench was admissible to show the reasonableness of defendant's fear because defendant personally knew of the incident, but evidence of a prior assault with a gun was not admissible because defendant had no knowledge of it), *aff'd,* 161 S.W.3d 507 (Tex. Crim. App. 2005); *Espinoza v. State*, 951 S.W.2d 100, 102 (Tex. App.—Corpus Christi 1997, pet. ref'd) (reversible error to exclude defendant's evidence of victim's reputation for violence when defendant testified that he was aware of victim's violent nature).

[20] *See Mozon*, 991 S.W.2d at 845; *Tate v. State*, 981 S.W.2d 189, 192-93 & n.5 (Tex. Crim. App. 1998); *see also Yantis v. State*, 94 S.W. 1019, 1021 (Tex. Crim. App. 1906) ("If there were threats of an uncommunicated character, [defendant] could then prove the dangerous character of deceased as a man likely to execute such threats, in order that the jury might determine who was most likely the aggressor in the difficulty: both what occurred in the wash-room and what occurred at the time of the killing.").

opinion testimony under Rule 405(a).[21]

Applicant's counsel properly offered evidence of Burleson's character for aggression under Rule 404(a)(2) when he called Robbie Davis, Douglas Hurst, Glenn Crawford, and Lee Arthur Thomas to testify to Burleson's violence, especially when drinking. There was ample evidence in the record that Burleson was the first aggressor, both from applicant himself and, inferentially, from Cleveland who testified that Burleson "invited" applicant to go around to the back of the club to "talk." But, as post-Rules opinions have repeatedly held, the defendant may *not* offer evidence of the victim's prior specific acts of violence to prove the victim's violent character and hence that the victim acted in conformity with that character trait at the time of the assault.[22] At the habeas hearing,

---

[21] See *Wilson v. State*, 71 S.W.3d 346, 350 n.4 (Tex. Crim. App. 2002); *Carson v. State*, 986 S.W.2d 24, 27-28 (Tex. App.—San Antonio 1998) (although the defendant was entitled to introduce evidence of victim's violent or aggressive nature to show that victim was first aggressor, he was not entitled to offer evidence of specific instances of violent behavior by the victim), *rev'd on other grounds*, 6 S.W.3d 536 (Tex. Crim. App. 1999). As the court noted in *Carson*, Texas common law was broader and did allow the admission of evidence of prior specific instances to show the deceased's character for violence. *Id.* at 27. *See also Perrin v. Anderson,* 784 F.2d 1040, 1044-45 (10th Cir. 1986) (interpreting the federal rules); *see generally* 1 STEVEN GOODE, OLIN GUY WELLBORN III & M. MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 404.4 (Texas Practice 2d ed. 1993); Newell H. Blakely, *Article IV: Relevancy and Its Limits,* 20 HOUS.L.REV. 151, 195-99 (1983).

[22] In *Tate*, this Court explained how the Rules modified the common-law doctrine:
The *Dempsey* line of cases stands for the proposition that reputation or specific act evidence is admissible to show a victim's character and demonstrate that either the defendant had a reasonable fear of the victim, or the victim was, in fact, the aggressor. However, this common law rule, as it developed, cannot be reconciled with the specific language of the relevant rules of evidence. While Rule 404(a)(2) allows the admission of evidence concerning a victim's character or pertinent character traits, Rule 405(a) limits the permissible method of proof to reputation or opinion testimony.
981 S.W.2d at 192; *see also Mozon*, 991 S.W.2d at 845; *Torres*, 71 S.W.3d at 760; *Davis v. State*, 104 S.W.3d 177, 181 (Tex. App.—Waco 2003, no pet.); *Carson*, 986 S.W.2d at 27-28; *Coleman v. State*, 935 S.W.2d 467, 470 (Tex. App.—Tyler 1996, pet. ref'd).

applicant's trial counsel stated that this was his understanding of the law. He was correct. Under Rule 404(a)(2), applicant was not entitled to offer evidence of any specific prior acts of violence–including Burleson's 1982 assault on Chris Hanson–to show that the victim was the first aggressor. That use is an attempt to prove Burleson's conduct in conformity with his violent character, and it is prohibited by Rules 404(a) and 405(a).

An entirely separate rationale supports the admission of evidence of the victim's prior specific acts of violence when offered for a non-character purpose–such as his specific intent, motive for an attack on the defendant, or hostility–in the particular case.[23] This extraneous offense evidence may be admissible under Rule 404(b).[24] Applicant does not suggest that this theory of admissibility might apply to evidence concerning Burleson's 1982 assault.

Applicant also contends that trial counsel should have discovered and used evidence of this prior conviction to impeach the State's rebuttal character witness, Darrell Galloway, who was Burleson's best friend. At the habeas hearing, trial counsel agreed that, had he discovered this

---

[23] *See* CHRISTOPHER B. MUELLER & LAIRD KIRKPATRICK, FEDERAL EVIDENCE § 103, at 569-70 (2d ed. 1994). In describing the analogous federal rules, the professors state,
> Proof of specific acts of violence by the victim toward the defendant is often admissible to show hostility, plan, intent to inflict harm, and similar matters. Here the argument is not so much that the acts show character, hence conduct in conformity with character, but rather that the acts shed direct light on more particular aspects of the victim's outlook or state of mind toward the defendant, and the proof is admissible under FRE 404(b).

[24] *See, e.g., Torres v. State*, 117 S.W.3d 891, 896-97 (Tex. Crim. App. 2003) (defendant was entitled to offer evidence that, several days before the murder, the victim had climbed through his ex-girlfriend's aunt's window and threatened her and her children; this evidence was relevant to show that the deceased had a specific motive or intent to be the first aggressor when he climbed through his ex-girlfriend's bedroom window early one morning and the defendant shot him); *see also Hayes v. State*, 161 S.W.3d 507, 509 (Tex. Crim. App. 2005) and *id.* at 509-10 (Keller, P.J., concurring); *Tate v. State*, 981 S.W.2d at 193 (Tex. Crim. App. 1998) (evidence of victim's prior specific acts may shed light on his intent or motive in the confrontation).

conviction, he would have attempted to use it in cross-examining Galloway.  He admitted that "it

might have" been admissible.  Indeed, it "might have been" admissible, but the trial judge (who was

not the same person as the habeas judge) certainly could have excluded any "Have you heard" or

"Did you know" cross-examination questions based on an eighteen-year-old event under Rule 403.[25]

The rationale for excluding cross-examination of a character witness concerning remote acts, events,

or convictions, is the same as that for excluding evidence of remote convictions to impeach the

testifying defendant:

> The reason for the adoption of the remoteness limitation on impeachment evidence
> is that a remote conviction is a poor indication of the accused's present character. A
> remote conviction must have occurred at a time sufficiently recent to have some
> bearing on the present credibility of the witness.[26]

Thus, although it is possible that the trial judge might have allowed Deputy Galloway to be

---

[25] *See Moore v. State*, 143 S.W.3d 305, 313-15 (Tex. App.—Waco 2004, pet. ref'd ) (although a character witness may be cross-examined to test the witness's awareness of relevant specific instances of conduct, the trial judge may exclude the use of prior specific instances under Rule 403; trial judge did not abuse his discretion in refusing to permit impeachment of character witness with complainant's prior theft convictions because they were more than ten years old).

[26] *Sinegal v. State*, 789 S.W.2d 383, 387 (Tex. App.—Houston [1st Dist.] 1990, no pet.); *see Miller v. State*, 549 S.W.2d 402, 403-04 (Tex. Crim. App. 1977) (reversible error to allow defendant to be impeached with remote prior convictions, the most recent being twelve years old, when there was no obvious basis for admission); *United States v. Gilliland,* 586 F.2d 1384 (10th Cir. 1978) (character witness may be cross-examined with evidence of prior convictions under Rules 404(a)(1) and 405(a), if the trial court determines that the prejudicial effect of the evidence offered to rebut character evidence does not outweigh its probative value; convictions dating back fourteen to thirty-four years were too remote); *see generally,* DAVID A. SCHLUETER & ROBERT R. BARTON, TEXAS RULES OF EVIDENCE MANUAL § 405.02[2][e][v] (8th ed. 2009) ("Given the potential prejudice of alluding to a specific instance of conduct, Rules 403 serves as a relief valve for limiting cross-examination under rule 405(a).  This is particularly appropriate when the alleged instances of conduct are remote in time or circumstances."); CHRISTOPHER B. MUELLER & LAIRD KIRKPATRICK, FEDERAL EVIDENCE § 121, at 723 (2d ed. 1994) (in evaluating cross-examination of character witnesses with prior specific instances of conduct, trial courts should "disallow inquiry into remote events whose relevance is diminished to almost nothing by the passage of time.").

impeached with Burleson's eighteen-year-old conviction, it is not probable.  The trial judge would not have erred in excluding such cross-examination.  Therefore, applicant's trial counsel can not be found constitutionally deficient for failing to attempt to cross-examine the deputy with that conviction to show that Galloway did not really know about Burleson's character for peacefulness.  Further, the assault conviction would not be admissible to prove Burleson's violent character, only to impeach Galloway's opinion of Burleson's peaceful character.  Applicant also would have been required to "take the witness's answer" and could not offer any extrinsic evidence of the conviction or details of the underlying assault.[27]  Finally, the State would have been entitled to a limiting instruction under Rule 105 to ensure that the jury did not misuse that evidence.[28]

Furthermore, applicant has not carried his burden of proof in showing that the failure to impeach Deputy Galloway's character testimony with such a remote assault conviction was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[29]  Applicant's counsel had already called four character witnesses to testify to Burleson's character for violence.  Applicant now claims that these witnesses were unimpressive because they were either "low-lifes" or applicant's friends.  Therefore, the jury was likely to discount their partisan testimony.  But Deputy Galloway was Burleson's best friend and had been the best man at his wedding, so the jury would be just as likely to discount his partisan testimony as it would to discount that of applicant's four character witnesses.  At any rate, character witnesses generally play a very small role in deciding

---

[27] *See Wheeler v. State*, 67 S.W.3d 879, 887 n.16 (Tex. Crim. App. 2002).

[28] T EX. R. EVID. 105.

[29] *Strickland*, 466 U.S. at 687.

the main issues at trial.[30] Here, it was virtually undisputed that Burleson started the fight, so whether he was or was not a violent person was largely beside the point. The issue that the jury had to decide was whether applicant should have retreated rather than stabbing the man who had kicked him.

We therefore conclude that applicant has failed to prove, by a preponderance of the evidence, that his trial counsel was constitutionally deficient and that there is a probability that, but for counsel's unprofessional errors, applicant would likely have been found not guilty.[31] We deny relief on his ineffective assistance of trial counsel claim.

**C.      Applicant Has Proven That His Appellate Attorney Was Ineffective in Failing to Challenge the Sufficiency of Evidence to Prove That Applicant Was Subject to Sentencing as an Habitual Offender.**

In his second claim, applicant asserts that his appellate counsel was constitutionally ineffective in failing to raise a point of error on appeal challenging the sufficiency of evidence to prove that applicant's first enhancement conviction was final before he committed his second enhancement offense. Had counsel done so, applicant would have been entitled to another punishment hearing.

*1.      Factual background.*

---

[30] Applicant noted that the prosecutor referred to applicant's character witnesses and Burleson's purportedly peaceful character during her closing argument. She stated that "Terry Burleson was murdered out on that vacant lot. His memory was assaulted here in the courtroom. You heard witnesses come in and try to convince you, this woman who was apparently very angry at whatever circumstances broke up herself and Terry Burleson, convicted felon, friends of the defendant come in here, try to make you believe that Terry Burleson, who can't come here and defend himself, was a bad person." This was a very minor reference in a lengthy closing argument that dwelt upon applicant's use of a knife to intentionally kill or cause serious bodily injury to an unarmed man. It is simply not plausible to believe that the jury convicted applicant of murder because of the quality or quantity of the character witnesses.

[31] *Strickland*, 466 U.S. at 687; *Tong v. State,* 25 S.W.3d at 707, 712 (Tex. Crim. App. 2000); *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004).

In its indictment in this case, the State alleged that applicant was convicted of possession of narcotics in 1972 and that, after that case became final, he was convicted of burglary of a habitation in 1976.  During the punishment hearing, applicant pled "Not true" to the two enhancement paragraphs, and the State offered a penitentiary packet ("pen packet") into evidence that contained the judgments for both of those offenses.  The trial judge found the enhancements true and sentenced applicant to thirty years in prison.

The pen packets show that applicant pled guilty to possession of heroin on November 30, 1972, in Cause No. 43,765 in Travis County.  That conviction became final on November 30, 1972. The pen packet also shows that applicant began serving his two-to-three year sentence on that heroin conviction on October 12, 1972.  The pen packet then shows that applicant pled guilty to burglary of a habitation on July 26, 1976, in Cause No. 50,285 in Travis County.  In that case, the judgment shows that the State waived the enhancement paragraph[32] set out in the indictment.  Applicant was sentenced to six years in prison, and his sentence began on July 15, 1976.

Applicant notes that the pen packet did not contain the indictment or offense report for the burglary judgment, so it is impossible to tell from the face of the burglary judgment exactly when this second offense was committed.  At the habeas hearing, applicant's trial counsel stated that he had a copy of the burglary indictment in his trial file, and it showed that the burglary was committed on November 26, 1975.  The State produced the burglary offense report which confirms that date.

2.      *The habeas court's factual findings.*

The habeas court entered one crucial, undisputed factual finding concerning this claim: "Appellate counsel did not contest the legality of applicant's sentence."  However, applicant's

---

[32] Presumably this was an enhancement paragraph alleging the 1972 heroin conviction.

appellate counsel had died and therefore could not explain what reasons and strategy he might have had in not contesting the legality of applicant's sentence. Therefore, we remanded this case for the habeas judge to address whether the doctrine of laches[33] should bar this claim because it was not raised until more than five years after final conviction and almost two years after appellate counsel died. On remand, the habeas judge concluded that laches did not bar consideration of this claim because applicant's tardiness in filing his habeas application was not caused by his lack of due diligence.

The evidence contained within the habeas record establishes these additional facts:

(1)     At trial, the State did not prove that applicant's burglary offense occurred after his heroin conviction became final;

(2)     The State now has sufficient evidence to prove that applicant's burglary offense occurred after his heroin conviction became final.[34]

The habeas judge also made the following conclusion of law:

Had appellate counsel raised this issue, the appellate court would have vacated the sentence and remanded for a new trial on punishment. *Cooper v. State*, 631 S.W.2d 508, 512 (Tex. Crim. App. 1982).

We adopt this conclusion because it accords with well-settled Texas law.

*3.      The applicable law.*

---

[33] *Ex parte Carrio,* 992 S.W.2d 486, 488 (Tex. Crim. App. 1999).

[34] Double-jeopardy principles do not bar the State from proving applicant's status as an habitual offender at a second sentencing hearing. *See Monge v. California,* 524 U.S. 721, 729-30 (1998) (double-jeopardy clause "neither prevents the prosecution from seeking review of a sentence nor restricts the length of a sentence imposed upon retrial after a defendant's successful appeal"); *Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999) (overruling *Cooper*, following *Monge,* and holding that double jeopardy does not bar the State from a second opportunity to present its proof of a prior conviction for the purpose of seeking a cumulated sentence).

To show that appellate counsel was constitutionally ineffective for failing to assert a particular point of error on appeal, an applicant must prove that (1) "counsel's decision not to raise a particular point of error was objectively unreasonable," and (2) there is a reasonable probability that, but for counsel's failure to raise that particular issue, he would have prevailed on appeal.[35] An attorney "need not advance *every* argument, regardless of merit, urged by the appellant."[36] However, if appellate counsel fails to raise a claim that has indisputable merit under well-settled law and would necessarily result in reversible error, appellate counsel is ineffective for failing to raise it.[37]

The law concerning sufficiency of the evidence to prove enhancement for habitual felony offenders is well settled. Section 12.42(d) of the Penal Code requires the State to prove this chronological sequence of events:

"(1)    the first conviction becomes final;

"(2)    the offense leading to a later conviction is committed;

---

[35] *Ex parte Santana*, 227 S.W.3d 700, 704-05 (Tex. Crim. App. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

[36] *Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasis in original); *see also Schaetzle v. Cockrell,* 343 F.3d 440, 445 (5th Cir. 2003) ("Counsel need not raise every nonfrivolous ground of appeal, but should instead present solid, meritorious arguments based on directly controlling precedent.") (internal quotation marks and alterations omitted); *Gray v. Greer*, 800 F.3d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").

[37] *Ex parte Daigle*, 848 S.W.2d 691, 692 (Tex. Crim. App. 1993) (habeas corpus applicant was entitled to a new appeal based on appellate counsel's ineffectiveness for failing to raise point of error on appeal concerning trial court's denial of defendant's timely request for jury shuffle, which, under then-prevailing law, was automatic reversible error); *see also Stallings v. United States*, 536 F.3d 624, 627-28 (7th Cir. 2008) (in deciding whether appellate counsel was ineffective for failing to raise a meritorious argument, reviewing court first examines the record to see whether the appellate attorney in fact omitted significant and obvious issues, and if so, court then compares the neglected issues to those actually raised; if the ignored issues are clearly stronger than those raised, appellate counsel was deficient under *Strickland*).

"(3)    the later conviction becomes final;

"(4)    the offense for which the defendant presently stands accused is committed."[38]

In this case, the State failed to offer evidence of the second prong: it failed to prove when the burglary offense was committed. Without evidence to support a finding that the burglary offense was committed after the heroin conviction became final, the State's evidence was insufficient to prove applicant was subject to punishment as an habitual offender.[39] Such a failure of proof is not subject to a harmless error analysis; it is a sufficiency-of-evidence deficiency that can "never be considered harmless."[40]

4.    *Appellate counsel was necessarily ineffective in failing to raise the sufficiency of evidence to support the trial court's finding that applicant was an habitual offender.*

Applicant had a "lead pipe cinch" point of error to raise on appeal. If his counsel had challenged the sufficiency of evidence to support the habitual enhancement, he would have prevailed. Any objectively reasonable attorney would have been familiar with the well-settled law concerning enhancement paragraphs and would have raised this "sure-fire winner" claim.[41]

---

[38] *Jordan v. State*, 256 S.W.3d 286, 290-91 (Tex. Crim. App. 2008) (quoting *Tomlin v. State*, 722 S.W.2d 702, 705 (Tex Crim. App. 1987)); *see also Valdez v. State*, 218 S.W.3d 82, 84 (Tex. Crim. App. 2007).

[39] *See Moore v. State,* 802 S.W.2d 367, 372-74 (Tex. App.—Dallas 1990, pet. ref'd); *Patterson v. State,* 723 S.W.2d 308, 316 (Tex. App.—Austin 1987), *aff'd,* 769 S.W.2d 938 (Tex. Crim. App.1989).

[40] *Jordan*, 256 S.W.3d at 292; *see also McCrary v. State,* 604 S.W.2d 113, 116 (Tex. Crim. App. 1980); *Williams v. State,* 596 S.W.2d 903, 904 (Tex. Crim. App. 1980); *Hickman v. State,* 548 S.W.2d 736, 737 (Tex. Crim. App. 1977); *Johnson v. State,* 784 S.W.2d 413, 414-15 (Tex. Crim. App. 1990).

[41] *See Ex parte Daigle*, 848 S.W.2d at 692; *Ex parte Felton*, 815 S.W.2d 733, 736 (Tex. Crim. App. 1991); *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex. Crim. App. 1979).

The State argues that applicant cannot carry his burden of proof because his appellate attorney is deceased and therefore cannot explain his strategy in failing or declining to raise this issue. The State contends that appellate counsel might have thought that his other points of error, relating to the guilt phase of trial, were more meritorious. Thus, he raised only his "best" claims. That is an excellent appellate strategy, but there is no "better" claim than one that is "a lead pipe cinch."

The State also argues that appellate counsel might have declined to bring this claim because he, like trial counsel, knew that applicant's prior convictions really were sequential and that the State really could prove them in a second sentencing hearing. Undoubtedly the State can and will prove them in a new hearing, but it did not do so in the first hearing, so the currently admitted evidence is legally insufficient to support his status as an habitual offender.

Finally, the State also suggests that appellate counsel might not have brought this claim because applicant's thirty-year sentence was on the lower end of the punishment range for an habitual offender, and applicant could be given a much longer sentence upon retrial. Had applicant been sentenced by a jury, that might be a valid consideration, but applicant was sentenced by the trial judge. Under *North Carolina v. Pearce*,[42] a trial judge may not increase a defendant's prior sentence on remand following an appellate reversal of his original sentence after a full trial unless the increase is based on (1) conduct occurring after the first sentence was imposed or (2) new evidence of which the State was unaware and could not, with the exercise of due diligence, have offered at the first

---

[42] 395 U.S. 711 (1969), *overruled in part by Alabama v. Smith*, 490 U.S. 794 (1989).

sentencing hearing.[43]   It was partly for this reason that we remanded the case to the habeas court–to give the State an opportunity to discover whether such post-sentencing conduct existed and might therefore justify an objectively reasonable appellate counsel from raising an otherwise winning claim.  The State did not offer evidence of such post-sentencing bad conduct or any other evidence supporting an increase in the sentence after a successful appeal.  Any competent attorney would be familiar with this well-settled doctrine of "judicial vindictiveness" and know that the trial judge could not sentence applicant to a greater term of years after a successful appeal unless there was objective evidence in the record to support an increased sentence.

The State's argument concerning plausible reasons for declining to raise a claim on appeal would normally prevail because reviewing courts must indulge in every possible presumption that counsel had a plausible strategy, but in this case we conclude that there is no plausible strategy for failing to bring a claim that is necessarily reversible error.[44]  Appellate counsel was ineffective.[45] And applicant has demonstrated prejudice because his legal-sufficiency challenge would have

---

[43] *Id.* at 726; *Alabama v. Smith*, 490 U.S. at 798; *United States v. Goodwin*, 457 U.S. 368, 374 (1982) (presumption of judicial vindictiveness for increasing sentence after successful appeal may be overcome by objective information justifying the increased sentence); *Hood v. State*, 185 S.W.3d 445, 448 (Tex. Crim. App. 2006) (discussing doctrine of judicial vindictiveness on resentencing and stating, "When a defendant proves 'that he was convicted, he appealed and obtained a new trial, and that the State thereafter filed . . . additional enhancements,' the burden shifts to the prosecution to provide an explanation of the additional enhancements 'that is unrelated to the defendant's exercise of his legal right to appeal.'") (quoting *Neal v. State*, 150 S.W.3d 169, 173-74 (Tex. Crim. App. 2004)).

[44] *See Ex parte Daigle*, 848 S.W.2d at 692.

[45] *See Ex parte Felton*, 815 S.W.2d 733, 736 (Tex. Crim. App. 1991); *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex. Crim. App. 1979).

prevailed on appeal.[46] And he may not be given a greater sentence by the trial judge after that successful appeal absent new, objective evidence that would justify such an increase.[47]

Relief is hereby granted. Applicant is entitled to a new appeal to challenge the sufficiency of evidence to support his thirty-year sentence.[48] The proper remedy in a case such as this is to return applicant to the point at which he can give notice of appeal.[49] For purposes of the Texas Rules of Appellate Procedure, all time limits shall be calculated as if the sentence had been entered on the day the mandate of this Court issues. We hold that should applicant desire to prosecute an appeal, he must take affirmative steps to see that notice of appeal is given within thirty days after the mandate of this Court has issued. All other requested relief is denied.

Delivered: October 28, 2009

Publish

---

[46] *See Ex Parte Daigle,* 848 S.W.2d at 692.

[47] *North Carolina v. Pearce*, 395 U.S. at 726; *Goodwin*, 457 U.S. 374; *Hood,* 185 S.W.3d at 448; *Neal*, 150 S.W.3d at 173-74.

[48] Applicant is entitled to appeal only the sentencing because that was the only respect in which appellate counsel was found to be ineffective.

[49] *Ex parte Daigle*, 848 S.W.2d at 692.