Opinion issued February
10, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-09-00629-CR

———————————

Kendrick
Tormai Hines,
Appellant

V.

THE STATE OF
TEXAS, Appellee



 



 

On Appeal from the 178th
District Court

Harris County, Texas



Trial Court Case No. 1151414

 



 

MEMORANDUM
OPINION

          A
jury convicted appellant Kendrick Tormai Hines of the offense of murder and
assessed punishment at 85 years’ imprisonment and a $10,000.00 fine.[1]
 The jury also found true two
enhancements for possession of a controlled substance and possession of a
firearm by a felon.  Appellant brings
three issues on appeal, arguing that the evidence is legally and is factually
insufficient to support his conviction and that the trial court erred in not
allowing him to present evidence concerning the symbolism of a tattoo on the
victim’s face.  We affirm.

Background

          Appellant was indicted for the murder
of Brandon Rem.  At trial, appellant’s
former girlfriend, Lorena Malone, testified that she lived with appellant and their
infant son in the Royal Palms apartment complex.  In October 2007, appellant moved into Symintha
Robinson’s apartment, which was also in the Royal Palms complex.  Appellant and Malone ceased dating, and
Malone took primary care of their child; however, appellant was able to see his
son on a few occasions.

          Malone was friends with Brandon Rem.  Rem called and asked to stay with Malone
because, following an argument with his wife, he had been “put out” of his home.  Rem met Malone at her apartment on the
morning of December 29, 2007.  Malone was
cleaning her apartment, and Rem accompanied her to take out the trash.  As they returned to the apartment, they saw
Robinson.

          Later that evening, appellant and
Robinson came to Malone’s apartment to retrieve some of appellant’s property.  Malone opened the door; appellant and
Robinson remained outside.  When
appellant saw Rem, he asked who he was.  Rem
approached the door, and Malone pushed him back.  Appellant saw “a chrome reflected item” in
Rem’s hand and thought it was a gun.  Appellant
and Robinson left.  Malone testified that
as appellant walked away he said that “he had something for [Rem].”  She further testified that it looked like
both appellant and Rem wanted to fight each other.

          Malone did not have a telephone, but she
wanted to tell her mother that appellant “had gotten into it with [Rem].”  She and Rem walked to their neighbor Shanta
Jackson’s apartment to use the telephone. 
Rem remained outside during Malone’s phone conversation.

          Appellant testified at trial that
after leaving Malone’s apartment he returned to Robinson’s apartment to
retrieve his gun.  He planned to return
to Malone’s apartment to retrieve his property.  On his way back to Malone’s apartment, he saw
Rem in the courtyard.  Appellant
testified that Rem said, “What you want to do?  What’s up now?”  Appellant testified that he saw a gun in
Rem’s hand and that Rem aimed the gun at him. 
Appellant was afraid, shot Rem, and fled the scene.

          One witness, Jenise Duncan, testified
to the shooting.  She testified that Rem
did not have a weapon when appellant shot him. 
She testified that as appellant approached Rem from across the courtyard,
Rem took off his jacket and backed up with his hands in the air for protection.  Appellant shot Rem, walked over to him, and
said, “You ain’t got nothing to say now, n——r.”

          A second witness, Melinda LeBlanc,
testified to seeing appellant and Rem immediately after the shooting.  Appellant’s trial counsel questioned LeBlanc
as to what appellant and Rem were wearing immediately after the shooting.  LeBlanc testified that Rem “had a do-rag on,”
and she also stated that “he had a jacket on,” although it was not entirely
clear from the transcript that LeBlanc was still referring to Rem.

          A third witness, Shanta Jackson, also
testified to seeing appellant and Rem immediately after the shooting.  She testified that she saw appellant walk up
to Rem after Rem had been shot.  She
testified that when she saw Rem on the ground he was not wearing a jacket.

          Andrew Friesenhahn, a Houston Fire
Department paramedic, responded to the incident, accompanied by other
firefighters.  They found Rem face down
and determined he was dead.  Friesenhahn
testified that Rem was not wearing a jacket. 
Because the crowd was hostile toward the team, and Friesenhahn feared
for the officers’ safety, the HFD team put Rem’s body on a stretcher and placed
it in the ambulance to wait for the police to arrive.  Friesenhahn testified that the he did not see
or feel a gun near Rem.

          Houston Police Officers M. Valle and E.
Tewes were sent to the scene.  They
attempted to control a crowd of approximately 100 people, while the fire
department worked on Rem’s body.  Officer
Valle testified that the only evidence he found at the scene was one spent bullet
casing.  Officer D. Nunez, a crime scene investigator,
arrived and photographed the scene.  In
addition to the spent casing, he found a camouflage jacket underneath a
blanket.  Officer Nunez did not find any
bullet holes, other spent casings, or other firearms at the scene.

          Houston Police Sergeants M. Sosa and P.
Munoz of the HPD arrived last.  Sergeant
Sosa testified that a jacket found near Rem’s body was recovered and searched
before being tagged into evidence and that no weapon was found in the
jacket.  Neither the firefighters nor the
police officers found a weapon on or near Rem’s body.

          James Jackson, a forensic chemist from
the Harris County Medical Examiner’s Office, performed the gunshot residue
analysis on Rem.  He testified that he
found two particles of the elements that comprise gunshot residue on Rem’s
right hand and no particles on his left hand.  These results were inconclusive as to whether
Rem had fired or was handling a gun.  Jackson
explained to the jury that gunshot residue is very transferable and that
individuals who did not come in contact with a gun could have one or two
gunshot residue particles on their hands as a result of their day‑to‑day
activities.  Jackson further explained to
the jury that the presence of gunshot residue particles could indicate that Rem
had handled or had fired a gun.

Analysis

Sufficiency
of the evidence

          In
issues one and two, appellant challenges the legal sufficiency of his
conviction because he contends the evidence established that he had a right to use
deadly force to defend himself.  See Tex.
Penal Code Ann. § 9.31 (West Supp. 2010).  When a challenge pertains to the rejection of
a defensive claim, we apply the same standards used in reviewing the
sufficiency of the evidence to support a guilty verdict.  See
Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

          We review the legal sufficiency of
the evidence by viewing the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).  The fact finder is the sole judge of the weight and credibility of
the evidence.  Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008).  Although our analysis considers all of the evidence presented at
trial, we may not re-weigh the evidence and substitute our judgment for that of
the fact finder.  King, 29 S.W.3d at 562.  We presume that the
fact finder resolved all conflicts in the evidence in favor of the verdict, and
we defer to that resolution.  Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007). 

          In Brooks v. State, the Court
of Criminal Appeals overruled Clewis v. State and held that claims of
factual insufficiency should now be analyzed under the Jackson v. Virginia
standard used for legal sufficiency review.  Brooks, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010) (“[W]e decide that the Jackson v. Virginia
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”).  Because appellant makes the exact same arguments for why the
evidence is both legally and factually insufficient, we solely address
appellant’s legal sufficiency contention. 
See Leonard v. State,
No. 01‑09‑00379‑CR, 2010 WL 4676989, at *2 n.2 (Tex.
App.—Houston [1st Dist.] Nov. 18, 2010, no. pet. h.).

          A defendant asserting a claim of
self-defense bears the initial burden of producing some evidence in support of his
contention; if he meets this burden, the State then takes on the burden of
persuasion to disprove the raised defense.  See Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App.
2003).  The State’s burden of persuasion
“is not one that requires the production of evidence, rather it requires only
that the State prove its case beyond a reasonable doubt.”  Id.  When the jury finds a defendant guilty, there
is an implicit finding against the defensive theory.  Id.

          The
jury exclusively judges the credibility of witnesses, the weight to be given to
their testimony, and the reconciliation of conflicting evidence.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); McKinny v. State, 76 S.W.3d 463, 468–69 (Tex. App.—Houston [1st
Dist.] 2002, no pet.).  The jury may
believe any part or all of a witness’s testimony.  McKinny,
76 S.W.3d at 469.  “Each fact need not point directly and
independently to the guilt of the appellant, as long as the cumulative force of
all the incriminating circumstances is sufficient to support the conviction.”  Hooper v.
State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  If there is evidence
that establishes guilt beyond a reasonable doubt and the jury believes that evidence,
the judgment must be affirmed.  Fitts v. State,
982 S.W.2d 175, 185 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).

          To convict appellant of murder, the
State had to prove, beyond a reasonable doubt, that appellant (1) intentionally
or knowingly caused Rem’s death or (2) intended to cause serious bodily injury
and committed an act clearly dangerous to human life that caused Rem’s death.  See Tex. Penal Code § 19.02(b) (West
2003).  Appellant would have been
justified in using deadly force if a reasonable person in his situation would
not have retreated and to the extent appellant reasonably believed that deadly
force was immediately necessary to protect himself against Rem’s use or attempted
use of unlawful deadly force.  Tex. Penal Code § 9.32(a) (West Supp.
2010).

          Appellant argues that the physical
evidence demonstrates that Rem could have had a gun on the night of the
shooting.  James Jackson’s testimony,
however, was inconclusive as to whether Rem had a gun at the time appellant
shot him.  Appellant further argues that
the presence of the blanket and the fact that Rem was not wearing a jacket when
the fire department team arrived are signs that the crime scene was
contaminated and that Rem’s gun could have been taken by another individual.  Appellant relies on the testimony of Melinda
LeBlanc that Rem was wearing a jacket after he was shot and lying on the ground.  Jenise Duncan testified, however, that Rem
removed his jacket before appellant shot him. 
Shanta Jackson testified that she saw appellant approach Rem after Rem
had been shot.  This suggests that she
witnessed the scene before any alleged contamination.  She testified that Rem did not have a jacket
on when he was lying on the ground with appellant present.  LeBlanc arrived on the scene immediately
after the shooting, and the testimony as to whether Rem was wearing a jacket
was unclear.

          When viewed in the light most
favorable to the verdict, there was evidence from which a rational jury could
have found guilt and from which it could have formed a rational doubt about the
credibility of appellant’s defensive theory.  The evidence in this case shows that appellant
shot Rem.  One witness testified to
seeing appellant shoot Rem, and numerous others testified that they saw
appellant near Rem’s body immediately after the shooting.  Appellant did not deny shooting Rem.  Appellant testified to the jury that Rem had
a gun, and the jury chose to disbelieve this testimony.  See
Saxton, 804 S.W.2d at 914 (holding
that jury verdict of guilty implicitly shows that jury rejected defendant’s
self-defense theory); Denman v. State,
193 S.W.3d 129, 132 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d) (holding
that “the jury, by finding appellant guilty, implicitly rejected his
self-defense theory . . . [and] necessarily chose not to believe [his]
testimony.”).  Jenise Duncan testified that
appellant shot Rem and that Rem was unarmed, and the jury chose to believe this
testimony.  See Saxton, 804 S.W.2d at 914.

          We conclude that a rational trier of
fact could have determined beyond a reasonable doubt that appellant committed
the offense of murder and did not act in legally permissible self-defense.  See Lee
v. State, 259 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d)
(holding that evidence was legally sufficient to support defendant’s conviction
for murder because jury could believe testimony of other witnesses and
disbelieve conflicting testimony given by defendant on issue of self-defense); Denman, 193 S.W.3d at 132–33 (holding
that “the jury [does] not have to accept [defendant’s] self‑defense
theory—appellant’s testimony does not ‘prove,’ by itself, a claim of self‑defense”).  We therefore hold that the evidence is both legally
and factually sufficient, and we overrule issues one and two.

Admissibility of evidence

          In issue three, appellant contends that the trial court erred by not allowing him to
introduce evidence of the meaning of Rem’s teardrop tattoo.           We review a
trial court’s decision to admit or exclude evidence under an abuse‑of‑discretion
standard.  Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App.
2002).  A trial court has wide discretion
in its decision to admit or exclude evidence. 
Edwards v. State,
178 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  We will not reverse a trial court’s ruling on
the admission of evidence unless that ruling falls outside the zone of
reasonable disagreement.  Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App.
2001).  If a trial court’s decision is
correct under any theory of law, the decision should not be disturbed even if
the trial court gave the wrong reason for its ruling.  See Romero v. State, 800 S.W.2d 539, 543–44 (Tex. Crim. App.
1990).

          “A defendant in a homicide prosecution
who raises an issue of self-defense may introduce evidence of the deceased’s
violent character.”  Torres, 71 S.W.3d at 760; see
Tex. R. Evid. 404(a)(2).  This evidence can include the victim’s
reputation for violence or particular violent actions committed by the victim
which would be relevant to the defendant’s reasonable belief that he needed to
act in self‑defense.  See Ex parte Miller, No. AP‑76,167,
slip op. at 10–11, 2009 WL 3446468, at *4 (Tex. Crim. App. Oct. 28, 2009), reh’g granted (Jan. 27, 2010); see also Stone v. State, 751 S.W.2d 579,
585 (Tex. App.—Houston [1st Dist.] 1988, pet. ref’d) (citing Thompson v. State, 659 S.W.2d 649,
653–55 (Tex. Crim. App. 1983)).  The
evidence of the victim’s reputation or previous violent actions must be
relevant for a purpose other than character conformity.  Tex. R.
Evid. 404(b).  Evidence demonstrating
the deceased’s violent character or the defendant’s fear of danger, to prove
the reasonableness of apprehension in a defendant’s self-defense claim, can be
a relevant use of evidence apart from character conformity.  See
Torres, 71 S.W.3d at 761.  This
evidence must be admitted as testimony in the form of opinion or testimony to
reputation.  Tex. R. Evid. 405(a).

          In
Mozon v. State, the Court of Criminal Appeals set out two theories for the
admissibility of evidence of the deceased’s character for violence.  The evidence may be admitted (1) to show that
the defendant’s perception of danger was reasonable based on the deceased’s violent
character, which requires a showing that the defendant was aware of the
deceased’s violent character, and (2) to show that the deceased was the first
aggressor in conformity with his or her character, which does not require a
showing that the defendant have personal knowledge of the deceased’s violent
character.  Mozon v. State, 991 S.W.2d 841, 845 (Tex. Crim. App. 1999).  Mozon
also addressed the effect of the Texas Rules of Criminal Evidence on the common‑law
understanding of these theories of evidence. 
Id.

          In Ex
parte Miller, the Court of
Criminal Appeals clarified that:

[A] defendant may offer reputation or
opinion testimony or evidence of specific prior acts of violence by the victim
to show the “reasonableness of defendant’s claim of apprehension of danger”
from the victim. This is called
“communicated character” because the defendant is aware of the victim’s violent
tendencies and perceives a danger posed by the victim, regardless of whether
the danger is real or not.  This theory does not invoke Rule 404(a)(2)
because Rule 404 bars character evidence only when offered to prove conduct in
conformity, i.e., that
the victim acted in conformity with his violent character. Here, the defendant
is not trying to prove that the victim actually is violent; rather, he is
proving his own self-defensive state of mind and the reasonableness of that
state of mind.

 

Ex parte Miller, No. AP‑76,167, slip op. at 10–11, 2009 WL 3446468, at *4 (internal citations omitted).[2]
 Evidence of the victim’s previous
violent acts, when offered for a noncharacter purpose, may be admissible under
Rule 404(b).  Id.,
No. AP‑76,167, slip op. at
13, 2009 WL 3446468, at *5.

          The victim’s previous violent acts do
not need to involve the defendant directly before this evidence can be
admissible under Rule 404(b).  See Hayes v. State, 161 S.W.3d 507, 509
(Tex. Crim. App. 2005) (holding that evidence of victim’s previous bad acts can
be admitted under Rule 404(b) even if those acts did not “implicate”
defendant).  However, the defendant must
be aware of the reputation or specific acts for the evidence to be admissible
to demonstrate his state of mind at the time of the commission of the crime.  Hayes v.
State, 124 S.W.3d 781, 785–86 (Tex. App.—Houston [1st Dist.] 2003) (citing Torres, 71 S.W.3d at 761 n.4) , aff’d, 161 S.W.3d 507 (Tex. Crim. App.
2005).

          At trial, the significance of Rem’s
tattoos was first addressed in the cross‑examination of Sergeant Sosa by
appellant’s trial counsel.  Once Sergeant
Sosa testified that he was familiar with gang tattoos and that gang tattoos
have symbolism attached to them, appellant’s trial counsel approached Sergeant
Sosa with photos of Rem and asked about the symbolism of Rem’s tattoos.  Sosa testified that he was familiar with the
teardrop tattoo in particular and that it was symbolic.  The State objected to questions about the tattoo
as improper character evidence.  Counsel
approached the bench, and appellant’s trial counsel stated that the
characterization of the tattoo could show that there was a “fight between
[appellant and Rem]” and that the tattoo could explain why the crowd was
hostile to Malone and Rem.

          On voir dire examination, Sergeant
Sosa, outside the presence of the jury, testified that a teardrop tattoo could
represent either “the loss of a homeboy” or that the person with the tattoo had
killed someone.  The trial court then
determined that testimony as to the meaning of Rem’s teardrop tattoo was
inadmissible.  The trial court ruled (1)
that the evidence was not relevant and (2) even if the evidence were relevant,
then it was excluded because the probative value of the evidence was outweighed
by the danger of undue prejudice, confusion of the issue, or danger of misleading
of the jury.  See Tex. R. Evid. 403
(providing that relevant testimony may be excluded if probative value of evidence
is outweighed by potential of unduly prejudicing, confusing, or misleading
jury).

          Latoya Rem, Brandon Rem’s wife, later
testified that she was familiar with Rem’s tattoos.  Appellant’s trial counsel asked Latoya Rem if
she knew what the tattoos meant.  The
State objected that the question was both irrelevant and improper character
evidence.  The trial court sustained this
objection.  The trial court retired the
jury, and appellant’s trial counsel questioned Latoya Rem about Rem’s tattoos
in a voir dire examination.  Latoya Rem
testified that Rem was not in a gang, that she did not know if the tattoos on
Rem’s body signified gang membership, and that Rem’s teardrop tattoo meant that
“[Rem] lost a loved one.”

          In subsequent testimony, appellant
testified that he did not see Rem’s teardrop tattoo during their initial
meeting at Malone’s apartment or at any time on the night that he shot Rem.  Further, he testified that he had never seen
Rem before the night he shot him.

          We hold that the trial court did not
err in refusing to admit the testimony on the symbolism of Rem’s tattoo.  Appellant’s determination that he needed to
shoot Rem in self-defense could not have been based on apprehension of Rem’s
previous violent acts or reputation as demonstrated by the tattoo because
appellant was unaware of Rem’s teardrop tattoo. 
Compare Hayes, 124 S.W.3d at 786
(upholding exclusion of evidence of potential victim’s previous assault on
third party with gun as evidence to show defendant’s state of mind because
defendant did not have personal knowledge of this assault), with Espinoza v. State, 951 S.W.2d 100,
102 (Tex. App.—Corpus Christi 1997, pet. ref’d) (holding that it is reversible
error to exclude defendant’s evidence of victim’s reputation for violence when
defendant testified that he was aware of victim’s violent nature).  Appellant was not aware of Rem’s reputation
as demonstrated by his teardrop tattoo; therefore, evidence about the tattoo to
demonstrate appellant’s state of mind was not admissible.  See
Hayes, 124 S.W.3d at 785–86.  The trial court did not abuse its discretion
in excluding inadmissible evidence.

We overrule appellant’s third issue.




 

Conclusion

          We
affirm the trial court’s judgment.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).











[1]           See Tex. Penal Code Ann. § 19.02(b)(2) (West 2003).





[2]           The
Texas Court of Criminal Appeals case on this issue, Ex parte Miller, No. AP-76,167, 2009
WL 3446468 (Tex. Crim. App. Oct. 28, 2009), reh’g granted (Jan. 27, 2010), has not been released for publication yet.  Miller
clarifies that 404(a)(2) applies only to evidence offered to show that the
victim was the first aggressor.  Id., No. AP‑76,167, slip op. at 10–11, 2009 WL 3446468, at *4.  It also
clarifies that evidence offered to show that the defendant’s apprehension of
danger is reasonable “does not invoke 404(a)(2)” and “may be admissible under
404(b).”  Id., No. AP‑76,167,
slip op. at 10–13, 2009 WL 3446468, at *4–5.