AFFIRM; Opinion Filed January 30, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01013-CR

## BILLY RAY WILLIAMS, SR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 363rd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F10-71348-W

# OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Myers

Appellant Billy Ray Williams, Sr., was convicted of aggravated assault with a deadly weapon and sentenced to fifteen years in prison. In three issues, he contends the evidence is insufficient, the trial court erred by refusing to allow defense counsel to impeach a State's witness with a prior inconsistent statement, and the court should have admitted evidence of the complainant's gang membership. We affirm.

## BACKGROUND AND PROCEDURAL HISTORY

Appellant rented a room from complainant David Crow's uncle at a house on Medill Street, in Dallas, Texas. Fifty-seven years old at the time of trial, appellant was unemployed and receiving Social Security disability payments. He had rheumatoid arthritis, gout, liver problems, and suffered

a heart attack in 2006. David Crow testified that, on the morning of February 8, 2010, the day before the offense, appellant entered their house drunk while David was on the couch watching television. Appellant stepped on David's shoes. When David asked appellant to apologize, appellant pulled out a knife and swung at David. David testified he "had no choice but to defend himself," and that he "beat up" appellant.

On the following day, February 9, David and his family went shopping. When they returned to their apartment complex, which was located on Park Row in Dallas, Texas, appellant drove up, and he and two of his sons "jumped out" of the car. David believed his family had been followed because he saw one of appellant's sons at the store when they were shopping. After getting out of the car, appellant "pulled out a knife" and swung at David's brother, Eric, trying to stab him. Eric backed away. Appellant's son ran towards David and his family, and appellant went back to the car and retrieved a rifle. David testified that appellant pointed the rifle directly at him. Appellant shot David in the right shoulder, David fell back, then appellant stood over him and shot him two more times—in the foot and the left buttocks. David denied doing or saying anything to appellant up to that point to provoke him, and David also denied possessing a weapon or making any threatening movements. David admitted he had several prior drug convictions.

Eugene Crow was a cousin of Evelyn Crow, who was the mother of Eric and David. He testified that, on the day before the shooting, after the confrontation between David and appellant, he had a brief conversation with appellant as he was leaving the Grand City grocery store. Appellant was sitting in a "little white car." He told Eugene, "I'm going to kill your cousin." When appellant made this statement, Eugene saw what looked like a shotgun on appellant's lap. Eugene told Evelyn what he had heard; David was also there. Eugene also testified that, in 1991, he had been convicted of delivery of a controlled substance.

–2–

According to Evelyn Crow, on February 9, 2010, she, David, Eric, and her common-law husband, Robert Kinney, went shopping to celebrate Evelyn's birthday. They stopped at the Grand City grocery store, then returned to their apartment. They had just returned from the store when appellant and his son pulled up approximately five feet behind them. Appellant got out of the car, walked over to Eric and punched him in the face. When Eric tried to hit appellant, Evelyn grabbed him because she could see appellant had a switchblade knife. Appellant got a rifle out of the backseat of his car and pointed it at Evelyn, who was standing between Eric and David. Appellant told David to "quit being a coward" and "step away from your momma." When David broke free from Evelyn, appellant shot him in the shoulder, knocking him to the ground. Appellant then shot David two more times, hitting him in the heel and the buttocks. Evelyn testified that neither she, her two sons, nor Robert made any threatening movements toward appellant. Appellant fled before the police arrived.

Eric Crow testified that after he and his family returned from shopping on the day of the shooting, appellant pulled up behind them and got out of his car. He asked Eric, "What's up now?" Eric asked appellant what he was talking about, after which appellant hit him in the face. Eric contended he had no weapon and did not make any threatening movement towards appellant, nor did he say anything to provoke him.

Eric put down the shopping bags and prepared to defend himself. Appellant pulled out a switchblade knife and opened up the blade, then backed up to his open car door and pulled out a single-barrel "long" rifle. Appellant pointed the rifle at Eric, David, and Evelyn. Appellant told Eric and David to "quit being cowards" and step away from their mother. When David moved away from his mother, appellant shot him in the shoulder. David fell down, and appellant fired several more shots. David was shot three times. Eric added that appellant "kept trying to fire, but I guess the gun

jammed, because he kept messing with it, trying to get it to shoot and it wouldn't shoot." At that point, someone punched Eric on the back of the head and said, "This is for my daddy, you mess with my daddy." Eric admitted he had three prior convictions concerning controlled substances.

After being recalled by the defense, Eric testified that he was intoxicated at the time of the shooting. His blood alcohol level was .27, which is more than three times the legal limit. Eric also testified that he joined a gang, the Park Row Posse, when he was approximately sixteen or seventeen years old. David Crow was also a member of this gang. Eric admitted having a "Park Row" tattoo on his chest and the number "187," which was also the police code for a murder, tattooed on his back. Eric testified that he was involved with the Park Row Posse for approximately seven or eight years, until he graduated from high school in 1997, and was not involved in gang activity "[p]retty much after that."

Joyce Rabb testified that she was at the Park Row apartment complex visiting a friend on February 9, 2010. At approximately 5:30 in the evening, she heard "a lot of commotion" outside of her friend's apartment. She looked out the window and saw "a guy standing over a boy laying on the ground." The man was pointing a "big long gun" at "the person that was on the ground." When Rabb went outside, she saw the man shoot the boy. She could not identify anyone in court as the shooter. Rabb acknowledged that she had been convicted of several theft offenses.

Robert Kinney lived with Evelyn, David, and Eric at the Park Row apartment. On February 9, 2010, they went shopping, were followed home, and as they unloaded their purchases from the trunk of their car, another car pulled up behind them. Kinney testified that appellant exited the car, went over to Eric, hit him in the jaw, then pulled out a knife. A second person also exited the car. This second person had his hand in his pocket, and Kinney "saw something silver coming out of his pocket, but he didn't take it all the way out." Kinney "figured it was a gun." After hitting Eric,

appellant backed away and got a gun from the driver side of the car. Kinney recalled that the gun was "kind of long and had a short clip magazine in it." Appellant told David, who was standing with Evelyn and Eric, to "break loose" from Evelyn so he could "take care of his business." As he said this, appellant pointed the gun at David. A few seconds after David pulled away from his mother, appellant "started shooting." Kinney testified that he saw appellant shoot David in the shoulder. David fell down, and then appellant shot him two more times. According to Kinney, no one in his group made any threatening moves toward appellant before the shooting began, nor did they say or do anything that could have been interpreted as a threat.

Appellant testified that, on the day before the offense, he was walking back to his room after washing clothes when he tripped over David Crow's foot. Appellant apologized, then opened the door to his room and put his clothes on the bed. Before he could enter the room, however, David repeatedly struck appellant in the face, knocking out his teeth and leaving him with a swollen face, lips and eyes. Appellant added that, because of his arthritis, he could not defend himself. Appellant estimated David hit him twenty to thirty times. The beating stopped only when David's uncle (who was also appellant's landlord) intervened. Appellant called the police to report the incident. Afraid of what David might do, appellant spent the night at his girlfriend's house in Carrollton, Texas.

Appellant testified that he had lived in the neighborhood "off and on" for approximately forty years and knew David's reputation and the reputation of his family. Asked about David's reputation for being a peaceful and law abiding citizen, appellant said, "That don't exist. They--drug dealers, robbers. They beat up old folks, take their money . . . I know they're dangerous, you know." Appellant added that David's reputation in the neighborhood was "not very peaceful." Appellant warned others in the neighborhood to "watch out for these guys" because "they're dangerous."

The day after the altercation with David, on February 9, 2010, appellant went to a

neighborhood store he often visited because he believed he would be safer there, and he did not want to be alone. While he was talking to neighbors about what happened, appellant saw David arrive at the same store. As David walked by appellant, he made a gun gesture with his fingers and acted as if he was shooting appellant. This made appellant even more afraid of David. Later that day, appellant saw David riding in a car with his brother Eric, their mother Evelyn Crow, and another man. Appellant wanted to talk to Evelyn about her son's behavior, so he followed them to their apartment.

Appellant testified that, when he got of his car at the Crow's apartment, Eric ran towards him "like he was fixing to start beating on me, too." In response, appellant pulled a small pocketknife from his pocket and told Eric to "get back." Appellant backed away and went to his car to get his rifle. Appellant looked back and saw David break away from his mother; appellant thought he was pulling out a weapon to shoot appellant "for coming over there." Appellant also heard David "say something about a gun." Believing he was in a life or death situation, appellant shot David several times in quick succession.

On cross-examination, appellant admitted he drank "beers in the morning" and "probably drank a couple of beers" on the morning of the February 8 incident at David's uncle's residence. Appellant testified that he tripped over David's shoe but denied that David asked him to apologize, that he pulled a knife on David, or that David swung at him in self-defense because he pulled a knife. Appellant also testified that he feared David and knew he frequented the store, yet he went to the store anyway. Appellant likewise admitted that, although he was terrified of David, he got in his car and followed David and his family to their apartment. Appellant insisted he "didn't touch Eric."

Dallas Police Officer Jasmine Mitchell testified that she responded to a disturbance call at the Medill street address on February 8, 2010. When the officer arrived at the crime scene, she

noticed that appellant's face, lips and eyes were swollen, and several teeth had been knocked out. Appellant had been badly beaten. Appellant told the officer that David Crow had assaulted him for accidentally stepping on his foot. Mitchell looked for David but could not find him.

Andrea Hollie, appellant's girlfriend, testified regarding appellant's injuries from the beating—appellant's mouth was bloody, his face was swollen, and his teeth "was knocked out." Appellant "was shaking" and "nerved up," and Hollie added that appellant was scared and "didn't know . . . why this happened to him or anything." She also testified that David and Eric did not have a reputation for being either peaceful or law-abiding.

Appellant was separately indicted for the aggravated assaults of David Crow and Eric Crow. The two cases arose from the same event, and were tried together. The jury found appellant guilty of aggravated assault against David Crow but acquitted him of the same offense against Eric Crow. This appeal followed.

## DISCUSSION

### Sufficiency

In his first issue, appellant contends the evidence is insufficient to support the aggravated assault conviction.

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894-95 (Tex. Crim. App. 2011). We are required to defer to the fact finder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326. The standard of review is the same for direct and circumstantial evidence cases. *See Isassi*

–7–

*v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Appellant was charged with committing aggravated assault with a deadly weapon by intentionally, knowingly, and recklessly causing bodily injury to David Crow by shooting him with a rifle, and that appellant used or exhibited a deadly weapon, a rifle, during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2). The court's charge instructed the jury that if it believed appellant:

> did intentionally or knowingly or recklessly cause bodily injury to David Crow, hereinafter called complainant, by shooting complainant with a rifle, and said defendant did use or exhibit a deadly weapon, to-wit: a rifle, during the commission of the assault, then you will find the defendant guilty of aggravated assault with a deadly weapon as charged in the indictment.

The jury was also instructed on the law of self-defense. A person is justified in using force when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A person is also justified in using deadly force against another when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a)(2)(A).

Self-defense is classified as a "defense," as opposed to an "affirmative defense." *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). With a defense, the burden at trial alternates between the defense and the State. *Id.* A defendant bears the initial burden of producing some evidence to support a claim of self-defense. *Id.* Once the defendant produces such evidence, the State bears the burden of persuasion in disproving the raised defense. *Id.* at 594 (citing *Saxton v. State,* 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)); *Harrod v. State,* 203 S.W.3d 622, 626 n.4

(Tex. App.—Dallas 2006, no pet.) (State's burden to negate self-defense is one of persuasion—not one of production as is State's burden to prove elements of an offense). "The jury alone decides whether to reject or accept a properly raised defensive theory." *Sparks v. State*, 177 S.W.3d 127, 131 (Tex. App.—Houston [1st Dist.] 2005, no pet.). If the jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Zuliani*, 97 S.W.3d at 594.

Additionally, the court's charge instructed the jury that it is unlawful for a person who has been convicted of a felony to possess a firearm at any location other than his premises, and that in determining whether appellant reasonably believed that the use of deadly force was immediately necessary, the jury could consider whether appellant failed to retreat if he was engaged in criminal activity at the time the deadly force was used. Appellant's indictment alleged, and he admitted, that he had prior felony convictions for DWI and possession of a controlled substance.

Appellant testified at trial that, on the day before the shooting, David Crow repeatedly struck him on the face and knocked out his teeth after he tripped over David's foot. Then, on the following day, appellant deliberately followed the Crow family to their home because he wanted to talk to David's mother, Evelyn, about her son's behavior. Appellant did this even though he feared David and believed the Crow family—described by appellant as "drug dealers" and "robbers"—had a reputation in the neighborhood for being neither peaceful nor law-abiding. Appellant testified that Eric Crow moved towards him, after which appellant pulled out a knife and then backed up to his car to retrieve a rifle from the vehicle. Appellant argues he heard someone say something about a gun when he was retrieving the rifle and that David Crow pulled away from his mother, causing appellant to fear for his life. Other witnesses testified, however, that appellant was the aggressor. Appellant shot David Crow several times.

Appellant's aggravated assault conviction is supported by legally sufficient evidence.

Appellant's testimony alone does not conclusively prove self-defense as a matter of law. *See London v. State,* 325 S.W.3d 197, 203 (Tex. App.—Dallas 2008, pet. ref'd). The jury was the sole judge of witness credibility and the weight to be given to the witnesses' testimony. *See id.* The jury was free to accept or reject the defensive evidence. *Saxton,* 804 S.W.2d at 944. Considering all of the evidence in the light most favorable to the verdict, we conclude a rational jury could have found appellant guilty of all of the elements of the offense beyond a reasonable doubt and rejected his self-defense claim. We overrule appellant's first issue.

### *Prior Inconsistent Statement*

In his second issue, appellant contends the trial court abused its discretion by refusing to allow defense counsel to impeach Eric Crow with an alleged prior inconsistent statement.

Prior to trial, the State had filed a motion in limine that sought to preclude any questions from the defense regarding any negative character trait, including gang membership or affiliation, and any prior criminal history not including felonies or crimes of moral turpitude, of any witness called by the State. At the prosecutor's request, the trial court tabled the motion until after hearing testimony from the complaining witnesses. Shortly before appellant testified, there was a discussion about the scope of his testimony. The trial court ruled appellant could testify about the Crows' reputation but not about anything appellant did not witness, and that there could be evidence of specific acts to show appellant's state of mind, but not evidence of the complaining witness's state of mind. The court added, however, that it would allow specific acts of misconduct on the part of the complaining witness to show his state of mind.

After defense counsel recalled Eric Crow, the witness testified, as noted earlier, that he was a member of the Park Row Posse for approximately seven or eight years, until he graduated from high school in 1997, and was not involved in gang activity "[p]retty much after that." When counsel

–10–

then asked about the street "boundaries" of the Park Row Posse, the State objected to relevance. Outside the presence of the jury, the prosecutor asked the trial court to limit the cross-examination into the specific acts of conduct with other witnesses that defense counsel was going to recall because appellant had already testified to what he knew about any specific acts at the time of the offense. The court granted the motion and explained that defense counsel could not explore any gang activity or any other offense or prior incidents that might have occurred.

When the trial resumed the following day, defense counsel sought to impeach Eric with the contents of two Dallas Police Department "gang information cards." According to defense counsel, this evidence would have shown that David and Eric Crow "self reported" to two Dallas Police Department gang unit officers that, in 2009, they were members of the Park Row Posse. The trial court refused to allow counsel to impeach Eric with this evidence, or to call the gang unit officers as witnesses. The gang information cards were admitted for record purposes as defense exhibit seven.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). The trial court's ruling does not constitute an abuse of discretion unless it lies outside the zone of reasonable disagreement. *Walters v. State*, 247 S.W.2d 204, 217 (Tex. Crim. App. 2007); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)(op. on reh'g). The court's decision will be upheld if it is correct under any theory that is supported by the evidence. *Willover*, 70 S.W.3d at 845.

Appellant contends he should have been allowed to impeach Eric Crow with the gang information cards and that this evidence was admissible as a prior inconsistent statement under rule of evidence 613(a). Rule 613(a) permits a party to impeach a witness with a prior inconsistent statement. TEX. R. EVID. 613(a); *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). To

–11–

qualify for admission under rule 613(a), however, the trial court must be persuaded the statements are indeed inconsistent. *Lopez,* 86 S.W.3d at 230; *see also United States v. Hale,* 422 U.S. 171, 176 (1975).

Defendant's exhibit seven contained two gang information cards. The first card, which was the first page of the exhibit, was an update of a gang member, who was listed as David Crow. The card stated David Crow's "gang affiliation" as the "187 Park Row Posse," and the "date of contact" listed on the card was May 4, 2009. Other information on the card indicated that David Crow frequented a gang area with another known gang member, who was identified on the card as Eric Crow. The residential address for David Crow and the address for the "known gang area" were the same: 3011 Park Row Avenue, Dallas, Texas 75215. The narrative section of the card stated, "SEE ERIC CROW 05/29/78 ON 05/04/09."

The second gang information card likewise indicated it was an update of a gang member, who was identified as David Crow. The card listed David Crow's "gang affiliation" as the "Park Row Posse" and the "date of contact" was February 9, 2010, which was also the date of the offense. The location of the interview and the residential address were the same: 3011 Park Row Avenue, Number 3110, Dallas, Texas 75215. A box marked on the card reflected that David Crow frequented a "known gang area" address—3000 Park Row Avenue, Dallas, Texas—with a "known gang member," who was listed as Eric Crow. The narrative section of the card stated that the "SUBJ" was shot by appellant "several times," and continued that the brother of the "SUBJ" "was assaulted" by appellant and three other unknown males. The narrative concluded: "SUBJ has claimed Park Row Posse and assoc has claimed 357 Crips and Park Row Posse in the past."

Nothing in either gang information card reflects that Eric Crow stated he was a member of a gang in 2009, or that he had been a gang member more recently than he testified at trial. Thus, we

cannot say the trial court abused its discretion by refusing the allow the impeachment evidence. Moreover, even if we assume the trial court erred, appellant has not shown how being denied the opportunity to impeach Eric Crow's testimony with the contents of the gang information cards harmed him, since appellant was acquitted of the aggravated assault of Eric Crow. *See* TEX. R. APP. P. 44.2(b); *Solomon v. State,* 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *see also Walters v. State,* 247 S.W.3d 204, 222 (Tex. Crim. App. 2007) (exclusion of evidence supporting defendant's defensive theory was nonconstitutional error); *Johnson v. State,* 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (erroneous admission or exclusion of evidence not reversible error unless it affects substantial right of defendant; substantial right is affected when error has substantial and injurious effect or influence in determining jury's verdict). We overrule appellant's second issue.

### *Gang Membership*

In his third issue, appellant argues the trial court abused its discretion by refusing to "allow evidence regarding David's Crow's gang membership."

The court of criminal appeals has noted that there are two theories pursuant to the rules of evidence that allow a defendant to offer evidence concerning the victim's character for violence or aggression when the defendant is charged with an assaultive offense. *Ex parte Miller,* 330 S.W.3d 610, 618 (Tex. Crim. App. 2009). First, a defendant may offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim to show the "reasonableness of defendant's claim of apprehension of danger" from the victim. *Id.* This is called "communicated character" because the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real. *Id.* (citing *Mozon v. State,* 991 S.W.2d 841, 846 (Tex. Crim. App. 1999)). This theory does not invoke rule of evidence 404(a)(2) of the rules of evidence because rule 404 bars character evidence only when it is offered to prove conduct that is

–13–

in conformity, *i.e.*, that the victim acted in conformity with his violent character. *Miller*, 330 S.W.3d at 618-19.

A defendant may also offer evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor. *Id.* Rule 404(a)(2) applies to this theory, which is called "uncommunicated character" evidence, because it does not matter if the defendant was aware of the victim's violent character. *Id.* "The chain of logic is as follows: a witness testifies that the victim made an aggressive move against the defendant; another witness then testifies about the victim's character for violence, but he may do so *only* through reputation and opinion testimony under Rule 405(a)." *Id.* (emphasis in original).

In this case, appellant contends the evidence of David Crow's gang membership, as well as evidence of his arrest for having a blackjack or club, was admissible under rule 404(a)(2) because it was offered to prove appellant feared David and Eric, and therefore went to the heart of appellant's self-defense claim and the state of appellant's mind at the time of the offense. To be admissible for showing his state of mind, however, appellant must have known of the specific acts of the victim before the assault. *See Mozon*, 991 S.W.2d at 845-46; *see also Hayes v. State*, 124 S.W.3d 781, 786 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 161 S.W.3d 507 (Tex. Crim. App. 2005) (evidence of prior assault with wrench admissible to show reasonableness of defendant's fear because defendant personally knew of incident, but evidence of prior assault with gun not admissible because defendant had no knowledge of it). The trial court allowed evidence of the fight between appellant and David Crow that occurred on the day before the offense, but denied appellant's request to present evidence of David Crow's arrest for having a blackjack or club because there was no evidence appellant had knowledge of those specific acts. The record supports the trial court's ruling. We cannot say the court abused its discretion by refusing to allow appellant to present evidence

regarding other specific acts of David Crow.

As for evidence of David Crow's gang membership, the jury heard Eric Crow testify that both Eric and David Crow belonged to a gang, the Park Row Posse. Appellant has not shown how he was harmed by the trial court's refusal to allow appellant to present additional evidence of David Crow's gang affiliation. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's third issue.

We affirm the trial court's judgment.

_____
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111013F.U05

−15−



# Court of Appeals
## Fifth District of Texas at Dallas

## **JUDGMENT**

BILLY RAY WILLIAMS, SR., Appellant

No. 05-11-01013-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the 363rd Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
F10-71348-W).
Opinion delivered by Justice Myers, Justices
Moseley and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 30, 2013.

_____

LANA MYERS
JUSTICE