**Affirmed and Memorandum Opinion filed April 29, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00052-CR

**STEVEN KEITH MILLIFF, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court
Montgomery County, Texas
Trial Court Cause No. 11-03-02327 CR**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Steven Keith Milliff of murder, sentenced him to confinement for 35 years in the Texas Department of Criminal Justice and assessed a fine of $6,000.  He appeals, claiming the trial court erred in excluding character evidence of the complainant and denying jury instructions on manslaughter and sudden passion.  We affirm.

## THE EVIDENCE

An officer of the Conroe Police Department responded to a call that an apartment door had been ajar for several days. The body of Fermin Flores was discovered in the bedroom. It appeared a struggle had occurred in the bedroom. A green pamphlet was found on the bed that was later determined to have appellant's fingerprints on it. Flores had a two-inch hole in the upper part of his chest and an empty shotgun shell adhered by dried blood to the front of his shirt. The wound was consistent with having been shot at close range by a shotgun. Underneath the bed was a canvas gun case. In the case were shells that matched the casing on the body. A "dog tag" was found under Flores's body with the name "Milliff, Steven Keith" on it.

Following an investigation, appellant was arrested and questioned by police. His video-taped interview and an audiotape of a "smoke break" conversation were admitted into evidence and played for the jury.[1] Appellant said Flores[2] pulled a shotgun from behind the mattress. Appellant "choked [Flores] out with his own shotgun" and then shot him in the chest.[3]

Appellant said he had never seen Flores before — the first time was at the apartment. Appellant claimed he knocked at the door, which he thought was to his friend Max's apartment, and Flores answered. However, Flores's wife testified that Flores was not the type of person to open the door to strangers.

On the tape, appellant said that, after Flores pulled out the shotgun, appellant jumped on Flores and put the shotgun in Flores's face. Flores bit him on the arm, leaving a bite mark. Appellant claimed he was fighting for his life. "Someone

---

[1] Appellant did not testify at trial.

[2] Although appellant did not, we will use Flores's name for clarity.

[3] It is unclear whether Flores was rendered unconscious when choked.

pulls a shotgun on me so I'm fighting for my life here . . . someone pulls a gun on you, you're going to…kill [him]." Appellant said the chain with his "dog tags" on it must have come off during the struggle. Appellant said that he remembered pulling the trigger of the shotgun and shooting. Appellant said he saw Flores slumped over, heard him moaning and crying, and saw smoke come out of his chest. After initially fleeing, appellant returned to the apartment to retrieve his jacket. He racked another round into the shotgun's chamber. When asked how he cleared the door, appellant said he probably kicked it in and, if there were signs of its being damaged, he probably did that when he had to go back in to get his jacket. The latch for the doorknob to the apartment was damaged. A shoeprint was found on the doorframe, slightly above and to the left of the doorknob. Expert testimony was presented that the print could have been made from appellant's shoe, or a shoe just like it.

Appellant's friend Max testified that he regularly sold marijuana to appellant. On the day of the shooting, appellant repeatedly called Max seeking marijuana, but Max did not sell any marijuana to appellant that day. Max lived at the Timber Pine Hollows Apartments in apartment 1315. Flores was in apartment 1311.

Another friend of appellant's testified that on the day of the shooting appellant called her wanting marijuana, but she was unable to deliver any marijuana that day. Appellant called her the next day, "very angry and upset" and told her "all that he wanted was his marijuana and that because [she] would not bring him his weed, he shot a man twice in the chest just to watch him die." While awaiting trial, appellant told another Montgomery County Jail prisoner that he went back into the apartment after Flores was shot, and Flores was still

3

breathing. The prisoner asked if he did anything or called anybody and appellant said, "No."

The medical examiner testified Flores's blood alcohol content was .22 percent, which would be "well intoxicated," but did not see any evidence that Flores had been choked. Flores's wound was rapidly fatal but death was not immediate.

During trial, defense counsel attempted to elicit testimony regarding Flores's character and reputation for aggressiveness after excessive consumption of alcohol. The testimony was excluded and an offer of proof was made. At the conclusion of the guilt-innocence phase of trial, a request was made to include an instruction on manslaughter in the jury charge but the request was denied. The jury was given an instruction on self-defense.

During the punishment phase of the trial, defense counsel again attempted to elicit testimony regarding Flores's reputation for aggressiveness after excessive drinking. The testimony was excluded and an offer of proof was made. At the conclusion of the punishment phase of trial, a request was made to include an instruction on sudden passion in the jury charge. The request was denied.

### *DISCUSSION*

Appellant raises three issues on appeal. Appellant claims the trial court erred in excluding evidence that would have supported his claim of self-defense. Appellant further argues the trial court erred in failing to charge the jury on manslaughter at guilt/innocence and by not instructing the jury on sudden passion in punishment.

## I.    Exclusion of Evidence

In his first issue, appellant claims the trial court erred in excluding evidence that when Flores drank too much he had a tendency to be violent.  Appellant asserts the following testimony of Flores's wife was admissible:

> [Defense Counsel]:    [D]id your husband have a habit of drinking in excess?
>
> [Witness]: On occasion, but he wouldn't drink every day or anything like that.
>
> [Defense Counsel]:  Was that one of the problems that lead to y'all's separation?
>
> [Witness]: At the last moment, it was because of that.  But we did talk about it.
>
> [Defense Counsel]:   Did your husband have a tendency to become aggressive when he was drinking to excess?
>
> [Witness]: Yes.

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard.  *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  When a defendant is charged with an assaultive offense, as in this case, the defendant may offer evidence of the victim's character for violence or aggression under either of two theories.  *Ex Parte Miller*, 330 S.W.3d 610, 618 (Tex. Crim. App. 2009).  Under the first theory, "communicated character," the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not.  *Id*.  "[T]he defendant is not trying to prove that the victim actually is violent; rather, he is proving his own self-defensive state of mind and the reasonableness of that state of mind." *Id*. at 619.  Neither party challenges the court's decision based on "communicated character."

The second theory, to show that the victim was the first aggressor, is called "uncommunicated character" because it does not matter if the defendant was aware of the victim's violent character. *Id.* A defendant in a murder case who raises the issue of self-defense may offer opinion or reputation testimony to prove the complainant acted in conformity with his violent nature. Tex. R. Evid. 404(a)(2); *Torres*, 71 S.W.3d at 760.[4]

Appellant's claim of self-defense rests upon his assertion that Flores was the first aggressor. Appellant claims the exclusion of the testimony set forth above prevented him from presenting evidence in support of his claim. In its brief, the State concedes some of the evidence was "likely admissible" but argues any error was harmless. Assuming, without deciding, the court erred in excluding the testimony, we will address the issue of harm. We first determine whether the error is constitutional or other error.

A constitutional error that is subject to harmless error review requires reversal unless the appellate court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a). Any other error that does not affect a substantial right must be disregarded. Tex. R. App. P. 44.2(b); and *see* Tex. R. Evid. 103(a). Citing *Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002), appellant claims the error was constitutional.

In *Potier,* the court held "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* at 665. Here, the excluded testimony was evidence that Flores drank to excess on

---

[4] Specific, violent acts of misconduct may be admitted to show the reasonableness of the defendant's fear of danger, or to show that the deceased was the first aggressor. But specific acts are admissible only to the extent that they are relevant for a purpose other than character conformity. Tex. R. Evid. 404(b).

occasion and had a tendency to become aggressive when he drank to excess. Appellant's defense was that Flores pulled the shotgun on him and he shot Flores in self-defense. Not only was appellant able to present this defense through his own statement, evidence was admitted that supported his claim. The gun case under Flores's bed contained the same type of ammunition used to shoot Flores. There was no evidence that appellant owned a shotgun or had one with him before entering Flores's apartment. The clear implication of the evidence was that the shotgun belonged to Flores and, most probably, he retrieved it from under the bed. Because the excluded evidence did not preclude appellant from presenting his defense, we conclude that constitutional error is not presented and that the error must be disregarded unless a substantial right was affected. *See* Tex. R. App. P. 44.2(b).

A substantial right is affected when the error had a substantial or injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A reviewing court should let a conviction stand if, after examining the record as a whole, it has fair assurance the error did not influence the jury or had but a slight effect. *Schutz v. State,* 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).

Appellant asserts the excluded evidence would have supported his theory of self-defense. The jury heard evidence that supported appellant's claim that Flores pulled the shotgun on him. However, there was also evidence that appellant "choked him out with his own shotgun" before shooting Flores. There also was evidence from which the jury could have found appellant broke into the apartment by kicking in the door. In light of the other evidence, we are fairly assured that exclusion of evidence that Flores had a tendency to become aggressive when he drank to excess did not influence the jury or had a but a slight effect.

7

Accordingly, we must disregard any error. *See* Tex. R. App. P. 44.2(b). Appellant's first issue is overruled.

## II.    Failure to Give Jury Instructions

### A. *Manslaughter*

In his second issue, appellant claims the trial court erred in the guilt/innocence phase by denying his requested jury instruction on manslaughter. In a prosecution for an offense with lesser-included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser-included offense. Tex. Code Crim. Proc. Ann. art. 37.08.

Our review of alleged jury charge error is under the standards set forth in the Texas Code of Criminal Procedure and interpreted in *Almanza v. State*. Tex. Code Crim. Proc. Ann. art. 36.19; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). First, we must ascertain whether the charge given over appellant's objection was in error. *Almanza*, 686 S.W.2d at 177. We conduct a two-prong test to determine whether a charge on a lesser-included offense should be given. *McKinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006). A party is entitled to such a charge when (1) "the offense is a lesser-included offense of the offense charged" in the indictment, and (2) the record includes some evidence to permit a rational jury to find that if the defendant was guilty, he was guilty only of the lesser offense, but not guilty of the greater. *Id*. The parties do not dispute that manslaughter is a lesser-included offense of murder as charged in the indictment here, so we proceed to the second prong. *See id.; see also Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012).

The distinction between murder and manslaughter in the Penal Code is that murder of the sort charged in this case requires a defendant to have intended to

cause serious bodily injury and to have committed an act clearly dangerous to human life that causes the death of an individual, while a defendant need only have acted recklessly[5] to be guilty of manslaughter. *See* Tex. Penal Code Ann. §§ 19.02(b)(2) and 19.04.

To satisfy the second prong, we must determine whether there is some evidence from which a rational jury could acquit appellant of murder while convicting him of manslaughter. *Cavazos,* 382 S.W.3d at 384. This is a fact determination and is based on the evidence presented at trial. *Id.* at 383. If there is such evidence, an instruction on the lesser-included offense is warranted, regardless of whether the evidence is weak, impeached, or contradicted. *Id. Mathis v. State*, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002) ("The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense."). There must be some evidence directly pertinent to the lesser-included offense for the jury to consider before a lesser-included instruction is warranted. *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003), *abrogated on other grounds by Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2011). Therefore, for a manslaughter instruction to be proper here, some evidence would have to demonstrate that, when he killed Flores, appellant was merely reckless and lacked the mental state necessary for murder.

Appellant refers only to his recorded statement where he claimed that he was in a defensive struggle and fighting for his life when he discharged the shotgun. Appellant's brief refers generally to "instances of witness testimony" and suggests a jury could infer that his mental state did not amount to one of culpable intent to kill; however, "difficulty remembering things," "evidence of post-traumatic stress

---

[5] A person acts recklessly when he is aware of, but consciously disregards, a substantial and unjustifiable risk. Tex. Penal Code Ann. § 6.03(c).

9

disorder," "[leaving] some of his belongings behind" is not evidence that appellant acted recklessly when he shot Flores at close range in the chest.[6]

Appellant relies upon *Brown v. State*, 296 S.W.3d 371, 383–84 (Tex. App.—Beaumont 2009, pet. ref'd), where a struggle also took place between the shooter and the victim.[7] *Brown* is distinguishable from the present case as it involved the trial court's granting the State's request for an instruction on manslaughter over the defendant's objection. *Brown* was decided before the Texas Court of Criminal Appeals decided *Grey v. State,* 298 S.W.3d 644 (Tex. Crim. App. 2009), in which it overruled precedent and held the State is not bound by the second prong under discussion here, whether there is some evidence the defendant is guilty only of the lesser offense. Moreover, the murder indictment in *Brown* required evidence that Brown intentionally or knowingly caused the death of the complainant, which is not at issue here. *Compare* Tex. Penal Code §§ 19.02(b)(1) and 19.02(b)(2).

The *Brown* court found "the jury [that convicted Brown of manslaughter but not of murder] could have reasonably rejected the State's theory [of murder under Tex. Penal Code §19.02(b)(1)]." *Id.* at 384. Specifically, the court pointed to Brown's trial testimony that he was attacked, first by the complainant's pit bull dog which Brown shot, then by the complainant's girlfriend, then by the complainant, who threatened to kill Brown and fought to gain control of Brown's handgun. The *Brown* court further found that the record contained evidence directly pertinent to Brown's recklessness with his handgun so as to permit the trial court to provide the jury with an instruction on manslaughter. *Id.* (citing *Thomas v.*

---

[6] The quoted language is from appellant's brief, not from evidence in the record.

[7] This case was transferred to this court from the Ninth Court of Appeals. In cases transferred by the Supreme Court of Texas from one court of appeals to another, the transferee court must decide the case in accord with the precedent of the transferor court if the transferee court's decision would have been inconsistent with the precedent of the transferor court. *See* Tex. R. App. P. 41.3.

10

*State*, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985) ("Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards the risk."). The court concluded that the record contained at least "some" evidence from which the jury could rationally acquit Brown of murder and convict him of manslaughter.

As the evidence in this case demonstrates, appellant stated that he "choked Flores out" with the shotgun before shooting him in the chest at close range. Appellant declared his intention was to kill Flores because Flores pulled a gun on him: "someone pulls a gun on you you're going to kill [him]." Appellant told his friend that he shot Flores because he could not buy marijuana: "just to watch him die." Appellant believed Flores was still alive when he racked another round in the shotgun chamber and kicked in the apartment door so he could retrieve his jacket. Appellant's evidence at trial did not affirmatively demonstrate he merely acted recklessly and not in a manner intending to cause serious bodily harm. *See Mathis*, 67 S.W.3d at 926.

Accordingly, the record does not support a finding that if the defendant was guilty, he was guilty only of manslaughter. We therefore conclude the trial court did not err in denying appellant's request for an instruction on manslaughter in the guilt/innocence phase. Issue two is overruled.

## B. *Sudden Passion*

In his final issue, appellant asserts the trial court erred in denying his request for an instruction on sudden passion in the punishment phase. A murder committed under the "immediate influence of sudden passion arising from an adequate cause" is a second-degree felony carrying a maximum punishment of twenty years' imprisonment. Tex. Penal Code § 19.02(d). Sudden passion is

11

"passion directly caused by and arising out of provocation by the individual killed" which arises at the time of the murder. Tex. Penal Code § 19.02(a)(2). Adequate cause is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code § 19.02(a)(1). The defendant has the burden of production and persuasion with respect to the issue of sudden passion. Tex. Penal Code § 19.02(d). A defendant is entitled to a jury instruction on the issue of sudden passion at the punishment phase if the record supports an inference: 1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; 2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; 3) that he committed the murder before regaining his capacity for cool reflection; and 4) that a causal connection existed "between the provocation, passion, and homicide." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). Whether the evidence is weak, impeached, contradicted, or unbelievable, if the evidence raises the issue from any source, during either phase of trial, the defendant has satisfied his burden of production and the trial court must submit the issue in the jury charge if the defendant requests it. *Id.*; *Trevino v. State*, 100 S.W.3d 232, 238–39 (Tex. Crim. App. 2003) (per curium).

While there was evidence appellant acted in response to provocation, *i.e.* testimony that Flores pulled out the shotgun, there was no evidence introduced that appellant shot Flores under the *immediate* influence of terror, anger, rage, or resentment. *Id.* at 241. Appellant declared his intention was to kill Flores because he pulled a gun on him: "someone pulls a gun on you, you're going to kill [him]." Appellant's own appraisal of his situation reveals that he had reflected on it, knew

what he had to do, and did it. *See Daniels v. State*, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983) (finding appellant's testimony he was afraid complainant "was going to kill [him]" did not demonstrate sudden passion where appellant also agreed that he knew he had to do what he did). Even if appellant had testified that he was frightened by the shotgun, "a bare claim of" fear does not demonstrate "sudden passion arising from adequate cause." *Id.; Wooten v. State,* 400 S.W.3d 601, 606–607 (Tex. Crim. App. 2013). Thus, the trial court did not err in failing to so instruct the jury at punishment. Furthermore, even if the trial court's failure to charge the jury with respect to sudden passion were error, we find appellant was not harmed. *See Wooten,* 400 S.W.3d at 606. "To assay harm, we focus on the evidence and record to determine the likelihood that a jury would have believed that the appellant acted out of sudden passion had it been given the instruction." *Id.* at 605. *See Wooten*, 400 S.W.3d at 608, n.38 (finding that, though typically considered under an *Almanza* harm analysis, neither the jury charge as a whole nor the arguments of counsel were particularly informative because, in the absence of a sudden passion instruction, the parties had no occasion to argue the issue pro or con.). A jury's rejection of a claim of self-defense does not automatically mean appellant was not harmed by the failure to receive a sudden passion charge. *See Trevino*, 100 S.W.3d at 242 (finding jury could have accepted alternate theory). However, it is a possibility. *See Wooten,* 400 S.W.3d at 609 (finding jury highly unlikely to find sudden passion where same evidence supported self-defense theory that jury rejected). "If, except in 'a rare instance,' the same evidence raising a fact issue on self-defense also raises an issue on 'sudden passion,' then it must also be true that, except in rare instances, when the State's evidence is sufficient to overcome a claim of self-defense, it will also be sufficient to show the absence of sudden passion." *Benavides v. State,* 992 S.W.2d 511, 524–25 (Tex. App.— Houston [1st Dist.] 1999, pet. ref'd).

In the present case, the jury's rejection of appellant's self-defense claim demonstrates the jury did not accept appellant's version of events. It is highly unlikely that a jury would nevertheless find in his favor under the same evidence on the issue of sudden passion. *See Wooten,* 400 S.W.3d at 608. Based on the evidence before us, it is exceedingly unlikely that the appellant suffered "some harm" as a result of the trial court's error, if any, in failing to give the jury a sudden passion instruction. Accordingly, we overrule appellant's third issue.

## *CONCLUSION*

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/ Martha Hill Jamison
   Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).

14